UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| GREGORY GOETZ, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:15-CV-50-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| LaDONNA THOMPSON, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

The Court addresses the following motions filed by *pro se* Plaintiff Gregory Goetz: Plaintiff's Notice/Motion to Serve Dr. William Greenman [R. 6]; Motion to Appoint Counsel [R. 7]; Motion to Appoint Impartial Expert Witness [R. 8]; Motion for Discovery [R. 9]; Motion to Supplement Expert Impartial Witness [R. 10]; and Motion for Preliminary Injunction [R. 12].  As explained below, Goetz's motion for an order directing service of process on Dr. William C. Greenman [R. 6] will be GRANTED.  However, Goetz's remaining motions [R. 7; R. 8; R. 9; R. 10; R. 12] must be DENIED.

**I**

Plaintiff Gregory Goetz, who is confined in the Kentucky State Reformatory in LaGrante, Kentucky, is proceeding without counsel in this civil rights action.  Goetz originally filed suit against the Defendants in Franklin Circuit Court, seeking "proper medical care now and in the future."  [R. 1-1.]  Specifically, Goetz alleges a violation the Eighth Amendment of the United States Constitution and Section 17 of the Kentucky Constitution because the Defendants are allegedly preventing him from obtaining certain medical treatment.  [*Id.*]  On July 30, 2015,

Defendants Elton Amos and Kristy Mullins removed the proceeding to federal court pursuant to 28 U.S.C. §§ 1441, 1446. [R. 1.]

The record currently reflects that all but one of the named Defendants have filed an answer to Goetz's "Petition for Declaration of Rights." [*See* R. 4-1 at 2, listing answer filed by Defendants LaDonna Thompson and Cookie Crews;[1] R. 20, answer filed by Defendants Elton Amos and Kristy Mullins.] Defendant William C. Greenman, M.D., has not filed an answer, and while the docket sheet from Franklin Circuit Court (Case No. 15-CI-557) is not entirely clear, it suggests that Dr. Greenman may not have been served with process as of this date. [*See* R. 4-1 at 1-2.]

## II

### A

The Court first considers Goetz's Notice/Motion to Serve Dr. William Greenman. [R. 6.] In his initial complaint, Goetz identifies Dr. William C. Greenman as the Medical Services Director for the Kentucky Department of Corrections ("KDOC") between February 2012 and July 2012. As mentioned above, Dr. Greenman does not appear to have been properly served as of yet in this matter.

In his motion, Goetz asks the Court to enter an order directing that Greenman be served at his current location, the Lexington Clinic: 100 N. Eagle Creek Drive, Lexington, Kentucky, 40509. The Lexington Clinic's website reveals that Dr. Greenman is, indeed, currently affiliated with the Lexington Clinic. *See* https://www.lexingtonclinic.com/staff/internalmedicine/williamcgreenman.html (last visited on December 26, 2015).

---

[1] In its December 23, 2015, Order, the Court noted that it was unclear from the record whether Defendant Cookie Crews had filed an Answer to Goetz's "Petition for Declaration of Rights." [*See* R. 19 at 2.] Upon further review of entries in the Franklin Circuit Court docket sheet prior to removal, the Court now clarifies that on July 30, 2015, Crews did in fact file an answer to Goetz's complaint. [*See* R. 4 at 2.]

In a § 1983 action, it is the inmate's responsibility to provide the proper addresses of the defendants for service of process. *See Fitts v. Sicker*, 232 F. App'x 436, 443 (6th Cir. 2007); *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996). As Goetz has provided what appears to be a current address for Dr. Greenman, Goetz's Notice/Motion to Serve Dr. Greenman [R. 6] will be granted. The Clerk of the Court shall issue a summons for William C. Greenman, M.D., Lexington Clinic East, 100 N. Eagle Creek Drive, Lexington, Kentucky, 40509, and shall transmit same to the United States Marshals Service so that it can effectuate service of process on Dr. Greenman. If the above address proves to be incorrect, Gotez will be instructed to provide the Court with another address at which the Marshals Service can effectuate service on Dr. Greenman.

**B**

Next, the Court considers Goetz's Motion to Appoint Counsel. [R. 7.] The appointment of counsel in a civil proceeding is justified only in exceptional circumstances. *Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996). To determine whether exceptional circumstances exist in a particular case, district courts consider the complexity of the factual and legal issues presented and determine whether fundamental unfairness—impinging on the right to due process—would result in denying a motion for appointment of counsel. *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993). A district court has complete discretion to grant or deny a motion to appoint counsel in a civil suit. *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992).

Here, Goetz articulates his facts and legal claims with accuracy and in great detail. He cites a significant amount of case law in his complaint, and he asserts straight-forward Eighth Amendment claims alleging deliberate indifference on behalf of the named Defendants to his serious medical needs. Goetz has also filed a series of well-organized motions in this proceeding, all of which demonstrate that he possesses an understanding of both the substantive and procedural issues

3

which arise in a civil rights action. The Court is not persuaded that exceptional circumstances exist in this civil case to warrant the appointment of counsel or that denying Goetz's motion would deprive him of due process of law. Accordingly, his motion seeking appointment of counsel [R. 7] will be denied.

## C

Goetz has filed two motions concerning expert witnesses: a Motion to Appoint an Expert Witness [R. 8] and a Motion to Supplement Expert Impartial Witness [R. 10.] In these two motions, Goetz asks the Court to appoint expert witnesses on his behalf in this proceeding. Both requests suffer from procedural defects.

First, any request relating to the appointment of expert witnesses is premature at this point in the litigation. Two of the defendants have only just filed their answers to Goetz's complaint [*see* R. 20] and one defendant has yet to be properly served at all [*see* R. 6.] At some future point in this proceeding, the Court may enter a scheduling order to address discovery issues and/or deadlines, as well as guidelines for expert witnesses. At that time, motion practice related to expert witnesses may become proper. But such an order will generally not be entered until all defendants have answered the complaint. The motions are thus premature at this time.

Second, Goetz misunderstands the purpose of appointing expert witnesses. The decision to appoint an expert under Federal Rule of Evidence 706 is not meant to serve as a vehicle for enabling a plaintiff to establish a *prima facie* case against the defendants. *See Tangwell v. Robb*, No. 01-10008-BC, 2003 WL 23142190, at *3-4 (E.D. Mich. Dec. 23, 2003). Instead, the appointment of an expert under Rule 706 should be exercised to assist *the Court*, not to assist a litigant in proving his or her case. *See Pedraza v. Jones*, 71 F.3d 194, 196 (5th Cir. 1995) (refusing to appoint an expert witness to help a litigant create a factual issue as to whether heroin withdrawal

could cause an individual to become of unsound mind); *Daker v. Wetherington*, No. 1:01-CV-3257-RWS, 2006 WL 648765 (N.D. Ga. 2006) ("Litigant assistance is not the purpose of Rule 706"). The decision to appoint an expert rests solely in the district court's discretion, and the decision is informed by factors such as the complexity of the matters to be determined and the fact-finder's need for a neutral, expert viewpoint. *See Peterson v. Burris*, No. 14-CV-13000, 2015 WL 7755402, at *2 (E.D. Mich. Dec. 2, 2015) (holding that a plaintiff's failure to secure an expert witness and his acknowledgement that he would not be able to secure such an expert without Court assistance demonstrated the plaintiff could not prove his case).

It is the plaintiff who must come forward with evidence to support the allegations in the complaint. *See Tangwell*, 2003 WL 23142190, at *4 ("It is the plaintiff's obligation in the first instance to come forward with evidence to support the allegations in his complaint.") "Indeed, the appointment of an expert witness for the plaintiff in this case under Rule 706 would be tantamount to the Court assisting the plaintiff in proving his case against the defendants. Rule 706 was not designed to provide such relief to a litigant." *Id.* Depending on the procedural events which may ensue in this action, it will be Goetz's burden to substantiate his claims that the defendants have denied him proper medical care and that he has suffered an actual injury because of their alleged actions or inactions.[2]

---

[2] At the proper phase of a proceeding, a district court should first determine whether the injury is "obvious," *i.e.*, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Cain v. Irvin*, 286 F. App'x 920, 927 (6th Cir. 2008) (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897-98 (6th Cir. 2004)).  If the facts suggest that the need for medical treatment was obvious, then, at the proper time, the Court must determine whether the delay in securing that care was reasonable. *Id.* at 899–900.  By contrast, in cases where the injury is not apparent or appears to be relatively minor, the Sixth Circuit has held that "an inmate who suffers from a seemingly minor or non-obvious condition complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2011).

5

Overall, it is premature for the Court to consider whether the appointment of expert witnesses will be necessary to assist its administration of this case. Goetz is free to raise any issues related to experts once discovery and other scheduling matters are underway, but, for the reasons stated above, his requests must be denied at this time as procedurally deficient.

**D**

In his Motion for Discovery [R. 9], Goetz asks that the defendants be ordered to provide him with all records relating to his past medical treatment and medical condition(s). However, like his motions related to expert witnesses, this request is premature. When all five of the named Defendants are served and have filed their answers, the Court may enter a discovery/scheduling order addressing discovery procedures and deadlines. Goetz is advised that the Court does not order parties to conduct discovery; instead, each party propounds its discovery requests (which can take various forms) on one another. The Court becomes involved only of a problem ensues with respect to another party's failure to respond to discovery requests. Therefore, the Court will deny Goetz's Motion for Discovery. [R. 9.]

**E**

Finally, Goetz seeks the entry of a temporary restraining order/preliminary injunction requiring the defendants to provide him with certain medical treatment. Generally, the moving party bears the burden of establishing his entitlement to a preliminary injunction. *See Overstreet v. Lexington–Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002). Under Federal Rule of Civil Procedure 65, injunctive relief is an extraordinary remedy designed to preserve the status quo and to effectuate preventative or protective relief. The factors considered in granting a temporary restraining order or a preliminary injunction are similar in nature. Courts consider the following factors: 1) whether the movant has a strong likelihood of success on the merits, (2) whether the

movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by issuing the injunction. *See, e.g.*, *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Summit County Democratic Central and Executive Committee v. Blackwell*, 388 F.3d 547, 552 (6th Cir. 2004); *Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet*, 305 F.3d at 573. Usually, a party's failure to show a likelihood of success on the merits is fatal to the party's motion for relief. *See Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

At this juncture of the proceeding, the Court cannot find that Goetz will succeed on the merits of his Eighth Amendment deliberate indifference claims. While Goetz may be entitled to some other form of relief, his request for a preliminary injunction based on the current record is premature. Goetz adamantly claims that he suffers from a degenerative cervical condition and that he, accordingly, is entitled to specific and immediate medical care. However, at best, the medical records which Goetz has attached to his complaint are conflicted as to the degree and seriousness of his condition. For example, the medical records before the Court do reflect that in February 2012, Dr. Rashid Faiyez concluded Goetz should consult with a neurosurgeon. [See R. 1-1 at 15-16 (noting, however, that Goetz demonstrated "Drug Seeking Behaviors").] Between May 2012 and July 2012, however, Dr. Greenman determined Goetz's diagnostic test results showed normal findings and that he did not have a neurological problem. [*Id*. at 19-20]. Later, in July 2014 and August 2014, Goetz was administered conservative treatment for his condition [*see id*. at 27, 30], and eventually his Klonopin prescription was discontinued. [*Id*. at 32]

7

Further, during a February 2, 2015, medical encounter at the Luther Luckett Correctional Complex, the medical provider noted Goetz's MRI results showed spurring and a broad based bulging disc, but his EMG test result was normal and a physical therapist ". . . asked him to not come back because he so greatly exaggerated his symptoms." [*Id*. at 31.] The medical provider also noted Goetz walked "straight and tall, normal gait," and that he held his left arm as if in pain even though he complained of pain on his right side. [*Id*.] The provider described Goetz as:

> . . . so manipulative and interrupted the conversation that I asked him to leave. IM did not present any signs of being in pain. His VS are stable. His BP is normal. He is semi compliant with edmdication [sic] and does not complain about standing in pill line…. IM says he will be in prison a long time and has 'to have something done.'"

[*Id*. at 33.]  On February 27, 2015, Dr. Elton Amos prescribed over-the-counter anti-inflammatories to treat Goetz's condition. [*Id*. at 36.]

Given the conflicting medical reports currently filed in the record, the Court is unable to conclude that Goetz has established the likelihood of success as to his Eighth Amendment claims and demands for specific medical care.  As noted, Dr. William C. Greenman (who, as KDOC Medical Services Director, appears to have made final administrative decisions as to Goetz's medical treatment during 2012) has yet to be served and, thus, has not yet filed an answer.  At the present time, Goetz has not demonstrated a strong likelihood of success on the merits and fails to satisfy the first criterion of the temporary restraining order/preliminary injunction analysis.

As for the second criterion of the analysis, Goetz has not demonstrated he will suffer irreparable injury without an injunction.  His allegations fail to address this point.  Similarly, Goetz does not allege that others would suffer harm if the injunctive relief is denied, nor has he demonstrated the public interest would be adversely affected if his request for an injunction is denied.  Thus, he fails to prove the third and fourth factors of the analysis.

8

The courts are ever cautioned to stay out of the business of micro-managing prisons. *See See, e.g.*, *Turner v. Safley,* 482 U.S. 78 (1987); *Bell v. Wolfish*, 441 U.S. 520 (1979); *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). "In the context of prison management . . . the status quo is to allow the BOP to manage its facilities and the prisoners incarcerated there. A restraining order would disturb the status quo and encroach on the BOP's discretion." *Smith v. Sniezak*, No. 4:07-CV-0306, 2007 WL 642017, *2 (N.D. Ohio Feb. 27, 2007). In keeping with this established concept and because Goetz's motion fails to satisfy the test for a temporary restraining order/preliminary injunction, the motion [R. 12] will be denied.

### III

Accordingly, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

1. Plaintiff Gregory Goetz's Notice/Motion to Serve Dr. Greenman [R. 6] is **GRANTED**.

2. The Clerk of the Court shall **ISSUE** a summons for William C. Greenman, M.D., Lexington Clinic East, 100 N. Eagle Creek Drive, Lexington, Kentucky, 40509, and **TRANSMIT** same to the United States Marshals Service, so that it can effectuate service of process on Dr. Greenman. If the above address proves to be incorrect, Goetz must provide the Court with a corrected address at which the Marshals Service can effectuate service on Dr. Greenman.

3. Goetz's remaining pending motions [R. 7; R. 8; R. 9; R. 10; R. 12] are **DENIED**.

This the 26th day of January, 2016.

Gregory F. Van Tatenhove
United States District Judge